**BLOCK v. MEANS et al.**
**No. 730.**

Municipal Court of Appeals for the District of Columbia.

Jan. 31, 1949.

164

Jacob W. Block, pro se.

Herman Miller, of Washington, D. C., for respondents.

Ernest F. Williams, of Washington D. C. (Ruffin A. Brantley, of Washington, D. C., on the brief), for Administrator of Rent Control, amicus curiae.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This case is here on landlord's petition to review an order of the Rent Administrator fixing a rental ceiling on a group of three rooms in premises 2016 O Street, Northwest. Petitioner has assigned several errors, of which we think only two require discussion: (1) the refusal of the Administrator to rule that because of certain construction work performed by petitioner after March 31, 1948, the rooms had become decontrolled, and (2) the refusal of the Administrator to approve the division of the rooms into two separate apartments or units.

The house in question is a three-story and basement building containing about 22 rooms. There is a bathroom in the basement used exclusively by one tenant. Prior to the time here involved there was no bathroom on the first floor. There were two other bathrooms, one on the second and one on the third floor, used by all the tenants in the building including the two tenants on the first floor. The first floor had been rented to respondents Nancy Means and Marcia Wellman, one occupying the rear room and one the front room and kitchen. The Administrator had previously, in August 1945, fixed maximum ceilings on an alternative basis for these three rooms (then known as Unit 3) as follows:

"$60.00 per month, single occupancy; $32.50 per person, per month, double occupancy; $25.00 per person, per month, triple occupancy; and $65.00 per month on a unit basis, with the unit rate applying whenever two or more occupants of the unit have entered into a joint agreement with the landlord as to the termination of the tenancy."

Petitioner alleged that he had removed a staircase and built a bathroom on this floor complete with toilet, wash basin, and tub, painted the walls and covered the floor with linoleum. He also claimed to have made other improvements in these rooms. He asked the Administrator to rule that this work, because it was completed after March 31, 1948, resulted in the decontrol of Unit 3 under the amendment to the local Rent Act which exempts:

"Any housing accommodations the construction of which was completed after March 31, 1948, or which are additional housing accommodations created by conversion after March 31, 1948". Public Law 507, 80th Congress, Section 2(3) (b), 62 Stat. 205, D.C.Code 1940, § 45—1602 (3) (b).

The examiner and the Administrator ruled against the landlord on this contention, and we think correctly. According to the statement of evidence "little or no evidence was offered by petitioner except for a number of letters and briefs he filed with the Administrator's Office." From evidence offered by the respondents and an inspection made by the examiner it was revealed that a refrigerator was furnished for the front unit but none for the rear room and that both occupants used the same refrigerator; that no bed linens were furnished; that both occupants used the one bathroom; that both occupants used the same common entrance; that the rear room had a separate exit that could be used only by going around the house and entering the building from the front in

order to reach the telephone; that the furniture and furnishings in both units were very sparse and that the condition of the walls and floors was very bad. Based on these facts we think the examiner and the Administrator were correct in ruling that these were not "housing accommodations the construction of which was completed after March 31, 1948, or which are additional housing accommodations created by conversion after March 31, 1948."

Undoubtedly the addition of the bathroom made the first floor more convenient and desirable, but it did not make room for a larger number of tenants and the result was still a room and kitchen in front and a single room in the rear. We note that landlord makes no claim that the other three floors of the house have become decontrolled. He says that because he has added a bathroom and made other improvements he has removed this one floor from the operation of the rent law. The argument cannot stand. We are clear in our belief that it was not the intention of Congress to provide so easy a means of removing property from rent control, and that these rooms, like the rest of the house must continue under the jurisdiction of the Rent Administrator.

Next we examine petitioner's complaint that the Administrator refused to approve the rental of these rooms except as a single unit and refused to permit him to establish the two front rooms as Unit 3 and the rear room as Unit 3(a). In the statement of evidence it is recited "that the severance of Unit 3 into two separate units was very impracticable due to its physical construction," and in his findings the examiner recited:

"That the housing accommodations now being offered for rent do not differ sufficiently to constitute new or different housing accommodations from that previously rented."

The Administrator in his brief contends that "having issued a previous order in which the housing accommodations under consideration herein were treated as one unit, it was within his scope of authority to consider whether there was any proper reason for the subdivision of these housing accommodations into two units." With this contention we cannot agree. In fact the Administrator himself when he fixed the earlier ceilings in 1945 approved four possible or potential types of occupancy: single, double, triple, and occupancy of the three rooms as a unit. His order in the present proceedings apparently prohibits the first three of these types of occupancy and limits the landlord to rental on a unit basis. This is in spite of the fact that for some time there have been and are actually two tenants in occupancy and, by the construction of the bathroom and other improvements, (limited in scope though they be) landlord has provided accommodations which now lend themselves better than before to double or even triple occupancy. The Administrator in his brief says that the effect of the examiner's finding and of his own order is to permit the landlord to rent the entire accommodations on a per person basis, and he construes his order to permit such rental to three persons at the rate of $25 per person, per month. Unfortunately, however, the order in the case does not seem to provide any such thing. The "Examiner's Finding and Recommended Order" provided simply for a maximum rent ceiling of $70 per month on "Unit 3," and this was affirmed by the Administrator. Thus no provision was made for separate renting of the front and rear units and none for apportioning the rent among the two tenants, or among three if there should be a triple occupancy later on. Obviously, therefore, the ruling needs amplification and correction. We rule that it was error to withdraw from petitioner the right to rent these two groups of rooms as separate units.

The Administrator says that landlord should not be permitted to receive $140 per month for these three rooms ($80 for the front unit and $60 for the rear) whereas in the past the ceiling thereon was fixed at $75. We agree that it would hardly be fair to almost double the rent merely because of the addition of a bathroom and the other improvements involved; and we are very far from even suggesting that such an increase should be granted. We have

no doubt that the Administrator will be able to correctly evaluate what rental should be fixed in the light of the improvements made and the two separable housing units the landlord has provided.

Reversed for further proceedings in accordance with this opinion.